UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SYMPHONIE A.,

                      Plaintiff,

          v.

KILOLO KIJAKAZI,[1] Commissioner of
  Social Security,

                    Defendant.
_____

**DECISION
and
ORDER**

**21-CV-75F**
(**consent**)

APPEARANCES:      LAW OFFICES OF KENNETH HILLER
                          Attorneys for Plaintiff
                          KENNETH R. HILLER and
                          MELISSA MARIE KUBIAK, of Counsel
                          6000 North Bailey Avenue
                          Suite 1A
                          Amherst, New York  14226

                          TRINI E. ROSS
                          UNITED STATES ATTORNEY
                          Attorney for Defendant
                          Federal Centre
                          138 Delaware Avenue
                          Buffalo, New York  14202
                                and
                          ANDREEA LAURA LECHLEITNER
                          Special Assistant United States Attorney, of Counsel
                          Social Security Administration
                          Office of General Counsel
                          6401 Security Boulevard
                          Baltimore, Maryland  21235

## <u>JURISDICTION</u>

On October 3, 2022, the parties to this action consented pursuant to 28 U.S.C.

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

§ 636(c) to proceed before the undersigned in accordance with this court's June 29, 2018 Standing Order (Dkt. 8).  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on December 2, 2021 (Dkt. 5), and by Defendant on December 6, 2021 (Dkt. 6).

## BACKGROUND

Plaintiff Symphonie A. ("Plaintiff"), brings this action under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's applications ("applications") filed with the Social Security Administration ("SSA") on September 22, 2015, for Social Security Disability Income under Title II of the Act ("SSDI"), and for Supplemental Security Income under Title XVI of the Act ("SSI") (together, "disability benefits").  Plaintiff alleges she became disabled on July 9, 2014, based on multiple sclerosis ("MS"), and bipolar disorder.  AR[2] at 206, 208, 260. Plaintiff's applications initially were denied on February 18, 2016.  AR at 12, 120-27.  On February 21, 2018, Plaintiff filed an untimely request for an administrative hearing, AR at 128-29, and after a pre-hearing conference on May 23, 2018, AR at 147, by letter dated April 16, 2019, Plaintiff's request for an administrative hearing was granted.  *See* AR at 148-63 (Notice of Hearing scheduling Plaintiff's administrative hearing for September 23, 2019).[3]

---

[2] References to "AR" are to the pages of the Administrative Record electronically filed by Defendant on July 6, 2021 (Dkt. 4).
[3] The record does not indicate why Plaintiff delayed in requesting and administrative hearing or why the hearing was permitted despite the apparently untimely request.

On September 23, 2019, an administrative hearing ("the administrative hearing") was held on Buffalo, New York, before Administrative Law Judge ("ALJ") Bryce Baird ("the ALJ").  AR at 79-95.  Plaintiff appeared without legal counsel, and the matter was adjourned to permit Plaintiff to submit recent medical records.  On January 7, 2020, the administrative hearing resumed before the ALJ.  AR at 28-78.  Appearing and testifying at the resumed administrative hearing were Plaintiff, represented by Megan Kale, Esq., and vocational expert Christina Boardman ("the VE").

On March 10, 2020, the ALJ issued a decision denying Plaintiff's claim, AR at 9-27 ("ALJ's Decision"), which Plaintiff timely appealed to the Appeals Council.  AR at 199-201.  On December 8, 2020, the Appeals Council adopted the ALJ's Decision that Plaintiff was not disabled, AR at 1-6, thus rendering the ALJ's Decision the Commissioner's final decision.  On January 15, 2021, Plaintiff commenced the instant action seeking review of the ALJ's Decision denying Plaintiff disability benefits.

On December 2, 2021, Plaintiff moved for judgment on the pleadings (Dkt. 5 ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 5-1) ("Plaintiff's Memorandum").  On December 6, 2021, Defendant moved for judgment on the pleadings (Dkt. 6) ("Defendant's Motion"), attaching Commissioner's Brief in Support of Her Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief (Dkt. 6-1) ("Defendant's Memorandum").  Filed on January 18, 2022, was Plaintiff's Reply to Commissioner's Memorandum in Support (Dkt. 7) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

**FACTS**[4]

Plaintiff Symphonie A. ("Plaintiff"), born July 9, 1993, was 21 years old as of her alleged disability onset date ("DOD") of July 9, 2014, and 26 years old as of March 13, 2020, the date of the ALJ's Decision.  AR at 12, 22, 206, 208, 244, 287.  Plaintiff lived in a house with her grandmother and her grandmother's two children.  AR at 42-43.  Plaintiff was never married and has no children.  AR at 42-43, 92, 207.

Plaintiff attended regular classes in school, graduated high school, obtained a Bachelor's degree in 2019, while Plaintiff lived and attended college in New York City.  AR at 42-45, 261.  Plaintiff has a driver's license, owns a vehicle, and drives.  AR at 42, 209, 274.  Plaintiff has past work experience as a child daycare provider, front desk clerk at a beauty salon, retail sales associate, as a representative at a call center, and also worked in various restaurants as a server and hostess, AR at 50-53, 261, 279-86, but alleges she last worked on July 14, 2015 because of her impairments.  AR at 260.

It is undisputed Plaintiff was initially diagnosed with MS in 2007, AR at 587, for which Plaintiff commenced treatment at Dent Neurologic Institute ("Dent"), with Malti Patel, M.D. ("Dr. Patel"), AR at 390-93, and was followed at Dent for her MS by nurse practitioner ("NP") Katelyn E. McCormack ("NP McCormack").  AR at 353-57, 366-71, 374-82, 386-90.  On September 22, 2014, Plaintiff underwent an initial psychiatric evaluation at Dent by Horacio Capote, M.D. ("Dr. Capote"), who assessed Plaintiff with mood disorder with depressive features due to general medical condition, generalized anxiety disorder, MS, vitamin D deficiency, history of pulmonary embolism, and a clotting defect.  AR at 383-86.  On September 1, 2015, Plaintiff underwent another

---

[4] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

psychiatric evaluation at Dent by psychiatric physician assistant ("PPA") Michael T. Asbach ("PPA Asbach"), who diagnosed bipolar disorder, generalized anxiety disorder, and vitamin D deficiency. AR at 371-74. On October 5, 2015, Plaintiff was treated for complaints of bilateral hip and knee pain at Dent by physical medicine and rehabilitation specialist Leonard Kaplan, DO ("Dr. Kaplan"), who diagnosed trochanteric bursitis of both hips and referred Plaintiff for physical therapy. AR at 954-59. On November 20, 2019, Plaintiff underwent a neurologic re-evaluation at Dent by Amir C. Mazhari, M.D. ("Dr. Mazhari"), who reported Plaintiff had tried multiple disease modifying therapies ("DMT") to treat her MS all of which produced unwanted side effects prompting Plaintiff to discontinue DMT medications and opt instead to treat her MS symptoms with medical marijuana which Plaintiff did not use often because of costs. AR at 739-43.

Between January 8, 2015 and September 11, 2017, Plaintiff was treated for bipolar disorder and PTDS at CMH Counseling ("CMH") where she saw Judith R. Brown, LCSWR ("Counselor Brown"), who completed a medical questionnaire ("medical questionnaire").[5] AR at 857-62. In connection with her disability benefits applications, on February 2, 2016, Plaintiff underwent both a consultative internal medical examination by Hongbiao Liu, M.D. ("Dr. Liu"), AR at 587-91, and a psychiatric evaluation by psychologist Janice Ippolito, Psy.D. ("Dr. Ippolito"). AR at 593-97. On February 9, 2016, State Agency psychologist Dr. A. Dipeolu conducted a psychiatric review technique assessment based on a review of Plaintiff's medical records and concluded Plaintiff has an affective disorder causing at most mild limitations to Plaintiff's mental functioning. AR at 96-117. At Plaintiff's request, NP McCormack completed

---

[5] The court notes medical questionnaire completed by Counselor Brown is dated April 9, 2009, which is almost six years before Plaintiff commenced treatment at CMH.

Physical Treating Medical Source Statements on April 11, 2019, AR at 864-68, and

November 4, 2019.  AR at 872-76.


## DISCUSSION

### 1.      Standard and Scope of Judicial Review

A claimant is "disabled" within the meaning of the Act and entitled to disability

benefits when she is unable "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§

416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's

determination that a claimant is not disabled if the factual findings are not supported by

substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g),

1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In

reviewing a final decision of the SSA, a district court "is limited to determining whether

the SSA's conclusions were supported by substantial evidence in the record and were

based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir.

2012) (internal quotation marks and citation omitted).  "Substantial evidence is more

than a mere scintilla.  It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  *Id*.  It is not, however, the district court's

function to make a *de novo* determination as to whether the claimant is disabled; rather,

"the reviewing court is required to examine the entire record, including contradictory

evidence and evidence from which conflicting inferences can be drawn" to determine

whether the SSA's findings are supported by substantial evidence.  *Id*.  "Congress has

instructed . . . that the factual findings of the Secretary,[6] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" *Id*. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

## 2.    Disability Determination

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a). The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Third, if there is an impairment and the impairment, or its equivalent, is

---

[6] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id*., but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if

the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

**3.     Analysis of Plaintiff's Arguments**

In the instant case, the ALJ found Plaintiff meets the insured status requirements for SSDI though December 31, 2023, AR at 14, and has engaged, through a combination of part-time or short-term positions, in substantial gainful activity ("SGA") since July 9, 2014, Plaintiff's alleged DOD, but only for parts of the relevant period including all of 2017 and the first quarter of 2018.[7]  AR at 14-15.  The ALJ found Plaintiff suffers from the severe impairments of MS, bursitis of the hips, and cervical stenosis, *id*. at 15, but that other conditions alleged by Plaintiff are not severe impairments including a history of pulmonary embolism, hernia repair, and vitamin D deficiency, as well as medically determinable mental impairments including bipolar disorder and anxiety disorder.  *Id*. at 15.  The ALJ also found Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id*. at 15-17.  Despite her impairments, the ALJ found Plaintiff retains the RFC to perform sedentary work limited to lifting, carrying, pushing and pulling 10 lbs. occasionally and 5 lbs. frequently, can sit for up to six hours in an eight-hour workday, stand or walk for up to six hours in an eight-hour workday, occasionally operate foot controls, bilaterally, occasionally climb ramps and stairs, can never climb ropes, ladders, or scaffolds, can occasionally balance, stoop, and kneel, never crouch or crawl, never work with excessive cold, can

---

[7] The ALJ did not specifically determine that Plaintiff's participation in such SGA was insufficient to render Plaintiff ineligible for disability benefits, but "elected to proceed through the remainder of the sequential evaluation process."  AR at 14-15.

tolerate moderate noise, never work with excessive vibration, unprotected heights, or moving machinery, can perform simple, routine tasks that can be learned after a short demonstration or within 30 days, can never perform production rate or pace work, can perform work that requires doing the same tasks every day with little variation in location, hours, or tasks, work that allows for the individual to be off-task 5% of the workday in addition to normal breaks, and work that does not require more than simple work-related decisions, but cannot be required to independently develop work strategies or identify workplace needs, can have no interaction with 50 or more people at once, and can have occasional interaction with the public. *Id*. at 18-21.  The ALJ further found Plaintiff is incapable of performing her PRW, *id*. at 21, but that based on Plaintiff's age on the alleged DOD of 21, and given Plaintiff's RFC, education, and ability to communicate in English, with transferability of skills irrelevant to the disability determination, there are jobs existing in significant numbers in the national economy that Plaintiff is capable of performing including as a charge account clerk, order clerk, assembler, stuffer, addresser, and table worker. *Id*. at 21-22.  Accordingly, the ALJ found Plaintiff was not disabled as defined in the Act through the date of the ALJ's Decision. *Id*. at 22.

Plaintiff raises two challenges to the ALJ's Decision including that the ALJ erred by failing to "tether very specific limitations in the RFC" to any medical or other evidence in the record, Plaintiff's Memorandum at 14-17, and by formulating an RFC that fails to adequately account for the impact of Plaintiff's limited ability to deal with stress. *Id*. at 18-22.  In opposition, Defendant argues the ALJ properly formulated an RFC that permitted Plaintiff to be off-task for 5% of the workday, Defendant's Memorandum at 7-

16, and properly accounted for the limitations that stress posed to Plaintiff's ability to work.  *Id*. at 16-23.  In reply, Plaintiff argues that the ALJ's specific limitation that Plaintiff would be off-task for 5% of the workday is not supported by substantial evidence. Plaintiff's Reply at 1-5.

Plaintiff's RFC formulated by the ALJ included a determination that Plaintiff "can perform work that allows the individual to be off task 5% of the workday in addition to normal breaks. . . ."  AR at 18.  In arguing that the ALJ did not properly evaluate Plaintiff's off-task limitation in formulating Plaintiff's RFC, Plaintiff asserts the ALJ's specific determination that Plaintiff would be off-task for 5% of the workday is not supported by any evidence in the record but, rather, conflicts with medical opinions of record including those of NP McCormack, Counselor Brown, and Dr. Ippolito.  Plaintiff's Memorandum at 15-16.  Plaintiff further argues that Counselor Brown opined Plaintiff's mental health impairments required Plaintiff be off-task at least 20% of the time, which, when considered in conjunction with the VE's testimony at the administrative hearing that employers would tolerate an employee being off-task up to 15% of the workday, would necessarily result in a determination that Plaintiff is disabled.  *Id*. at 16-17.

"*Specific* RFC assessments must be based on evidence in the record, not on an 'ALJ's own surmise.'"  *Elder v. Comm'r of Soc. Sec*., 2019 WL 6320355, at * 5 (W.D.N.Y. Nov. 26, 2019) ("*Elder*") (italics added) (quoting *Cosnyka v. Colvin*, 576 Fed.Appx. 43, 46 (2d Cir. 2014) ("*Cosnyka*")).  Relevantly, in *Cosnyka*, the Second Circuit rejected the ALJ's specific determination that the claimant would be off-task for breaks for six minutes of each hour which was not supported by any evidence in the record and, thus, was based only on the ALJ's own surmise.  *Cosnyka*, 576 Fed.Appx.

at 46.  In *Cosnyka*, the ALJ "translated" medical evidence suggesting that the claimant would be off task "ten percent of the workday" into a determination that the claimant would be off task "six minutes out of every hour."  *Id*. at 46.  Because "[t]here [was] no evidence in the record to the effect that [the claimant] would be able to perform sedentary work if he could take a six-minute break every hour, rather than some other duration and frequency amounting to ten percent of the workday . . . ," the Second Circuit ordered the matter remanded to the ALJ.  *Id*.  Simply put, the ALJ may not weigh evidence and somehow "arrive at specific limitations that do not appear anywhere in that evidence." *Heckman v. Comm'r of Soc. Sec.*, 2019 WL 1492868, at *4 (W.D.N.Y. Apr. 4, 2019) (citing *McBrayer v. Sec'y of Health & Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983) ("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.")).  Nevertheless, in the instant case, the ALJ's formulation of the RFC's provision that Plaintiff could perform work that "allows," but does not require, Plaintiff to be off-task for 5% of the workday does not necessarily require remand.  *See James G. v. Comm'r of Soc. Sec.*, 2022 WL 2180158, at * 7 (W.D.N.Y. June 16, 2022) ("*James G.*") (affirming the ALJ's determination that the plaintiff was not disabled where the 5% off-task limitation assigned by the ALJ was supported by the lack of any evidence showing a greater off-task percentage of time should have been used because "the ALJ carefully crafted the RFC so that it does not specifically require the off-task time, but rather, allows such off-task time," which was "further highlighted by the question posed to the VE, *i.e.*, not that Plaintiff *will* be off task 5% of the workday but rather whether such jobs would *allow* Plaintiff to be off task 5% of the day.").  Consistent with the relevant caselaw, here, the court construes the ALJ's determination that

Plaintiff could work a job "that allows the individual to be off-task 5% of the workday,"
AR at 18, as allowing, but not requiring, Plaintiff to be off-task for a specific amount of
time, *i.e.*, 5% of the workday.

Nor is remand required by the fact that the ALJ's determination that Plaintiff could
perform a job that permitted her to be off-task for 5% of the workday is not "tethered" to
any medical evidence in the record, as Plaintiff argues.  Plaintiff's Memorandum at 14-
17.  Such argument ignores that Plaintiff bears the burden of establishing her RFC is
more restrictive than the ALJ's determination.  *See Smith v. Berryhill*, 740 Fed.Appx.
721, 726 (2d Cir. 2018) (denying remand where the plaintiff failed to meet his burden to
prove a more restrictive RFC than assessed by the ALJ) (citing 42 U.S.C § 423(d)(5));
*Michael P. V. Commissioner of Soc. Sec.*, 2023 WL 21228, at * 7 (W.D.N.Y. Jan. 3,
2023) (declining to remand and granting the commissioner's motion for judgment on the
pleadings where the plaintiff presented no evidence of functional limitations greater than
those found by the ALJ).  Here, that the ALJ's determination that Plaintiff could work a
job in which she was allowed to be off task for 5% of the workday is not "tethered" to
any particular medical evidence in the record, in the absence of any evidence in the
record suggesting Plaintiff would be off task more than 5% of the work day, establishes
only that the ALJ's finding is more restrictive than the medical record supports such that
even if incorrect, the ALJ's RFC determination is merely harmless error.  *See Ellen A. v.
Saul*, 2021 WL 1087949, at * 4 (W.D.N.Y. Mar. 22, 2021) (ALJ's determination that
Plaintiff's RFC was more restrictive than what was supported by the medical evidence in
the record was favorable to the plaintiff and thus was harmless error).

Significantly, although Counselor Brown stated Plaintiff's impairments caused marked and extreme limitations in her ability to maintain concentration, persistence, or pace, AR at 859, thereby giving rise to Counselor Brown's opinion that Plaintiff would have to be off-task for 20% of the workday, the ALJ gave this opinion "little weight" as it "is neither consistent with other medical and psychological records nor with the claimant's functional level, which includes obtaining employment at the substantial gainful activity level and completing a college degree."  AR at 15.  Relevantly, the record establishes that for all of 2017 and the first quarter of 2018, Plaintiff worked a combination of jobs from which she earned income in excess of the SGA level, AR at 221, 222, and attended college in New York City from 2018 through 2019, earning her bachelor's degree in the summer of 2019.  AR at 42.  Further, the ALJ found numerous inconsistencies between the administrative record and Counselor Brown's opinion including that the record shows Plaintiff attended mental health counseling only on January 8 and 12, 2015, November 20, 2015, May 2, 2016, and was counseled by telephone on September 10 and 11, 2018, AR at 15 (citing AR at 681-95, Plaintiff's counseling records with Counselor Brown at CMH), yet in her opinion, Counselor Brown reported that between January 8, 2015 and September 11, 2017,[8] Plaintiff received counseling treatment "weekly to biweekly and intermittent."  AR at 857.  Counselor Brown also diagnosed Plaintiff with a personality disorder[9] and PTSD, AR at 15 (citing

[8] Counselor Brown's reference to September 11, "2017" appears to be a typographical error as the relevant treatment notes are devoid of any entry for September 11, 2017, but indicate Plaintiff sought counseling with Brown by telephone on September 11, 2018.  *See* AR at 694.

[9] Anxiety, depressive and bipolar disorders, with which Plaintiff was repeatedly diagnosed, *see* AR at 371-74, 383-86, and 596, are evaluated under the category of "depressive, bipolar and related disorders" which are "characterized by an irritable, depressed, elevated, or expansive mood, or by a loss of interest or pleasure in all or almost all activities, causing a clinically significant decline in functioning," 20 C.F.R. Part 404, Subpt. P, Appx. 1, § 12.00A.3, whereas personality disorders are evaluated under a separate

14

AR at 681-95), impairments that are not found elsewhere in the record.  The ALJ's grant of "little weight" to Counselor Brown's opinion thus is supported by substantial evidence in the record.

Even where, as here, the ALJ's RFC determination does not directly correspond to any medical opinion in the record, the RFC determination will be upheld so long as it is supported by the Plaintiff's daily activities, treatment history, and consultative examiner's evaluations.  *See Wilson v. Colvin*, 2017 WL 2821560, at *5 (W.D.N.Y. June 30, 2017) ("Furthermore, the fact that an RFC assessment does not correspond exactly to a medical expert's opinion in the record does not mean that the RFC assessment is 'just made up'"); *Kirkland v. Colvin*, 2016 WL 850909, at *12 (W.D.N.Y. Mar. 4, 2016) (finding that the ALJ did not err by assessing specific limitations that did not precisely correspond to any medical opinion because the plaintiff's daily activities, treatment history, and consultative examiner's evaluation supported those limitations).  In the instant case, the ALJ relied on Plaintiff's reported activities of daily living which included driving, cooking, cleaning, shopping, showering and dressing, AR at 17, 20 (citing AR at 588), the fact that after her alleged DOD, Plaintiff engaged in SGA for 5 consecutive months, AR at 17 (citing 221, 222), completed college in New York City, *id*. (citing 42-45), and maintained close relationships with some family members and her boyfriend with whom she once resided.  AR at 17 (citing 1051).  The ALJ also considered that Plaintiff's hobbies included crocheting in which Plaintiff would engage for "multiple hours daily."  AR at 18 (citing AR at 275).  Plaintiff testified at the administrative hearing that she is able to take care of and cook and clean for herself.  AR at 57.  On February 2,

---

category of "personality and impulse-control disorders" which "are characterized by enduring, inflexible, maladaptive, and pervasive patterns of behavior." 20 C.F.R. Part 404, Subpt. P, Appx. 1, § 12.00A.7.

2016, Plaintiff reported to Dr. Ippolito that she cooks, cleans, does laundry, grocery shops, showers, bathes, dresses independently, drives, regularly interacts with friends, maintains family relationships, takes care of her dog, and pursues her hobbies and interests included watching movies.  AR at 596.  The ALJ was permitted to rely on such activities in formulating Plaintiff's RFC.  *See Lora v. Colvin*, 2017 WL 4339479, at * 5 (S.D.N.Y. Sept. 12, 2017) (upholding ALJ's finding plaintiff was not disabled where plaintiff's testimony of regularly attending college, daily performing routine self-care activities, and socializing with friends was inconsistent with a finding of disability).

The ALJ also considered Plaintiff's treatment records including Dr. Mazhari's November 20, 2019 progress note showing Plaintiff with intact sensation, intact coordination, steady gait, full ability to walk on heels and toes, full motor strength except for Plaintiff's left upper extremity that was 4+/5 because of a left shoulder injury, and equal reflexes.  AR at 742.  Dr. Mazhari further reported Plaintiff had not fallen in the previous six months, AR at 740, and was able to regularly exercise, *id*., which Dr. Mazhari encouraged, *id*. at 743.  As Defendant argues, Defendant's Memorandum at 11, a physician's recommendation of exercise is consistent with a finding the claimant is capable of light work.  *See Rivers v. Astrue*, 280 Fed.Appx. 20, 22 (2d Cir. 2008) (affirming the district court's finding upholding the ALJ's determination the claimant was capable of light work where the claimant's physician encouraged the claimant to continue with her exercise regime).  Significantly, other treatment notes from Dent show Plaintiff, despite her MS, has a steady gait and normal mental functioning.  AR at 725-38.  Further, NP McCormack similarly opined on April 11, 2019, that Plaintiff could both sit and stand/walk for six hours in an 8-hour workday.  AR at 866.

Moreover, in neither NP McCormack's opinion of April 11, 2019, that Plaintiff's need to take unscheduled breaks would depend on the severity of her symptoms, AR at 866, or of November 4, 2019, that Plaintiff's impairments "constantly" interfered with her attention and concentration, AR at 873, does NP McCormack suggest Plaintiff would need to be off-task for any specific amount of time.  Insofar as Plaintiff, in arguing the ALJ improperly found Plaintiff would need to be off-task for 5% of the workday, cites to NP McCormack's statement on the Physical Medical Source Statement form completed on April 11, 2019, that Plaintiff would "sometimes need to take unscheduled breaks during a working day," Plaintiff's Memorandum at 16 (citing AR at 866), not only is such finding equivocal in that NP McCormack did not definitively stated Plaintiff would regularly need unscheduled breaks, but also, that how often Plaintiff would need to take unscheduled breaks was "unclear – depends on severity of symptoms."  AR at 866. Thus, Plaintiff's need to take unscheduled breaks as assessed by NP McCormack is, at best, ambiguous and does not support that Plaintiff would be off-task for more than 5% of a workday.  The court observes that although the Physical Medical Source Statement specifically asks the preparer to estimate how much the patient is likely to be "off task" based on the patient's symptoms, NP McCormack did not check any of the boxes next to the six options, stated in increments of 5% from 0% to 25% or more.  AR at 868. Similarly, although NP McCormack estimated Plaintiff would likely be absent from work four days per month, TR at 868, as the ALJ observed, AR at 20, this finding is inconsistent with NP McCormack's statement that Plaintiff's MS symptoms are subject to "flare-ups of debilitating symptoms at unknown times."  AR at 868.  Moreover, the ALJ found NP McCormack's statements regarding Plaintiff's need for unscheduled

breaks and absences from work to be inconsistent with NP McCormack's treatment notes, particularly those of September 25, 2019, when Plaintiff denied new symptoms, reported using medical marijuana to manage chronic pain "with good results," and declined DMT in favor of a "holistic" approach to manage her MS including "following a "self-care plan including dietary changes, exercising and taking multiple vitamins."  AR at 623-26.

The ALJ also relied on the consultative opinions of Dr. Liu and Dr. Ippolito. Defendant's Memorandum at 20.  Although aware of Plaintiff's history of MS and Plaintiff's associated complaints of pain and weakness, Dr. Liu reported Plaintiff's prognosis was stable and dependent on the state of her MS development, AR at 590, and opined Plaintiff has a mild limitation for prolonged walking, bending, and kneeling. *Id*.   Upon examining Plaintiff in consultation, Dr. Ippolito was aware of Plaintiff's diagnosis of bipolar disorder and anxiety disorder, and found Plaintiff had no limitations with following and understanding simple directions and instructions, performing simple tasks independently, learning new tasks, performing complex tasks independently, and relating adequately with others, had mild limitations maintaining attention and concentration and making appropriate decisions, moderate limitations maintaining a regular schedule, but was markedly limited in dealing with stress.  AR at 596.  Dr. Ippolito opined Plaintiff's psychiatric problems "may significantly interfere with the claimant's ability to function on a daily basis."  *Id*.  The ALJ gave this opinion "some weight" as the evaluation and record support some limitations in the identified areas, but not the severity opined by Dr. Ippolito.  AR at 20.  Relevantly, Dr. Ippolito's consultative opinion was rendered on February 2, 2016, yet Plaintiff engaged in SGA for all of 2017

and the first quarter of 2018, and managed to move to New York City where she graduated from college in 2019.

These consultative reports are consistent with the treatment notes in the administrative record, and the ALJ is permitted to rely on the opinion of a consultative examiner provided the opinion is supported by and consistent with other evidence in the record.  *See Camille v. Colvin*, 652 Fed.Appx. 25, 28 (2d Cir. 2016) (consultative physician's report may constitute substantial evidence).   In sum, neither evidence of Plaintiff's daily living activities, treatment notes, nor the consultative opinions support any need for work breaks in excess of 5%.  Moreover, in the absence of any evidence establishing Plaintiff would be off-task for more than 5% of the workday, the ALJ's inclusion of such limitation in formulating the RFC is, at most, a greater limitation than supported by the record and, as such, harmless error.  *See Ellen A. v. Saul*, 2021 WL 1087949, at *4 (W.D.N.Y. Mar. 22, 2021) (holding the ALJ formulation of an RFC that was "technically unsupported by substantial evidence in the record" was "harmless error" because "even with greater limitations assessed by the ALJ" the plaintiff was still disabled).  There thus is no merit to Plaintiff's first argument.

Plaintiff's further argument that the ALJ failed to adequately account for the impact of Plaintiff's ability to deal with stress in the RFC finding, Plaintiff's Memorandum at 18-22, is also without merit.  Although the ALJ did not specifically reference "stress" in formulating the RFC, the ALJ was not required to do so and courts within this district have repeatedly held that an RFC that limits work to jobs requiring only occasional changes in a work setting, limiting contact with others, and requiring only routine, repetitive, and simple tasks, sufficiently accommodates a claimant's stress limitation.

*See Darnell v. Comm'r of Soc. Sec.*, 2021 WL 1405853, at * 8 (W.D.N.Y. Apr. 14, 2021) (holding although the ALJ did not specifically reference "stress" in the RFC, the ALJ sufficiently accounted for the claimant's stress by restricting the claimant to work requiring only occasional changes in the work-setting, only occasional contact with others, and permitting the claimant to be off-task 10% of the time) (citing *Figgins v. Berryhill*, 2017 WL 1184341, at * 10-11 (W.D.N.Y. Mar. 29, 2017) ("The ALJ may not have mentioned stress explicitly, but he implicitly incorporated the <u>effects</u> that stress would have on plaintiff in his RFC and the questions he asked the VE.") (underlining in original)).   In the instant case, the ALJ specifically confirmed with the VE that the Dictionary of Occupational Titles does not contemplate a "low stress" job but, instead, the VE, when asked to consider a stress limitation, "would look at simple, routine tasks." AR at 70.  The VE further explained that "low stress" word would preclude production rate or pace work such as on an assembly line or conveyor belt, but would allow for so-called "table work" with occasional public contact.  AR at 72-74.  *See McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) ("An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumptions upon which the vocational expert based his opinion and [the assumptions] accurately reflect the limitations and capabilities of the claimant involved.") (bracketed material added) (internal quotation omitted).

Further, the ALJ's reliance, AR at 20, on Dr. Dipeolu's consultative psychiatric review of Plaintiff's medical records which showed Plaintiff with an affective disorder posing at most mild mental limitations was also permitted.  *Hairston v. Comm'r of Soc. Sec.*, 2020 WL 516897, at *4 (W.D.N.Y. Jan. 29, 2020) ("It is well-established that '[a]

well-supported opinion from a consultative examining physician, a non-examining state agency doctorand/or a medical expert may . . . provide substantial evidence supporting an ALJ's decision.'" (quoting *Cassandra K. v. Comm'r of Soc. Sec.*, 2019 WL 1115673, at *6 (N.D.N.Y. Mar. 11, 2019))), *aff'd sub nom. Hairston-Scott v. Comm'r of Soc. Sec.*, 2021 WL 3777581 (2d Cir. Aug. 26, 2021).

In short, Plaintiff has not sustained her burden of establishing that no reasonable factfinder could have reached the same conclusion as the ALJ based on the evidence of record. *See Henderson v. Comm'r of Soc. Sec.*, 2019 WL 3237343, at ** 7-8 (W.D.N.Y. July 18, 2019) (sustaining the ALJ's materiality finding where the plaintiff "has not shown that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence of record." (citing *Brault*, 683 F.3d at 448)). Accordingly, the ALJ's determination that Plaintiff could perform a limited range of sedentary work is supported by substantial evidence in the record.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 5) is DENIED; Defendant's Motion (Dkt. 6) is GRANTED. The Clerk of Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      January 18th, 2023
            Buffalo, New York